IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LASHEA MOORE** PLAINTIFF

V. CIVIL ACTION NO. 4:19-CV-092-NBB-RP

**THE MICHAELS ORGANIZATION,
LLC, AND INTERSTATE REALTY
MANAGEMENT COMPANY** DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Lashea Moore, is a former employee of defendant Interstate Realty Management Company ("IRMC").[1] IRMC, a property management company, was the property manager of Driftwood Apartments in Drew, Mississippi, where the plaintiff worked as a "community property manager." The plaintiff began her employment with the defendant on January 22, 2018, with a few days of training at the Sunflower Apartments in Clarksdale, Mississippi, before beginning work at the Driftwood Apartments. She reported to regional manager Christy Stuckey.

As a community property manager, the plaintiff had full on-site day-to-day responsibilities for all property and community management activities at the apartment complex.

---

[1] The plaintiff improperly named The Michaels Organization, LLC, as a defendant in her complaint; however, Interstate Realty Management Company was the plaintiff's employer at all times relevant to the claims asserted in the complaint. IRMC was reorganized and began operating as "Michaels Management – Affordable, LLC" in April 2019, approximately a year after the plaintiff's employment termination.

Her duties included managing the physical upkeep and stable fiscal operation of the property. Additionally, she was to provide residents with a good community atmosphere, manage financial resources, process recertification paperwork to the U.S. Department of Housing and Urban Development ("HUD"), and lead the property staff.

The plaintiff asserts that her supervisor, Christy Stuckey, was in the plaintiff's office in either March or April, 2018, when she noticed prenatal vitamins on the plaintiff's desk. According to the plaintiff's deposition testimony, Stuckey asked "Whose prenatal vitamins are those?" The plaintiff responded that they were hers. Stuckey then stated, "Wow. Why would you do that? That's, you know – that's dumb. You just got pregnant, knowing that, you know, we have – you have to travel, and you have to do all of your work." The plaintiff added, "And then me and her, we started really joking. At that time, me and Christy used to talk a lot, joke a lot, and that's when I turned back around – and we started working together." [Doc. 32-1, p. 32, 8-20]. In a later recollection of the same scene during the same deposition, the plaintiff stated that Stuckey asked "What was this for," referring to the prenatal vitamins, and the plaintiff simply smiled at her without comment. Stuckey then allegedly stated, "That was a stupid decision that you made. Why would you do that, knowing that you, you know, started here?" *Id.* at p. 76, 10-15. The plaintiff does not recall if she herself even knew she was pregnant at the time of the conversation with Stuckey. When asked if the exchange with Stuckey occurred before or after the plaintiff took a home pregnancy test with a positive result, the plaintiff replied, "I don't remember." *Id.* at p. 77, 7.

All new employees of IRMC, including the plaintiff, are subject to a 90-day probationary period at the beginning of their employment in which to demonstrate that they are competent employees. During this time, IRMC evaluates the employee's performance, skills, and

compatibility with the requirements of the job. According to Stuckey, the plaintiff performed poorly and was terminated at the end of her probationary period for a number of reasons, including, inter alia, her confrontational and rude behavior reported by residents, her refusal to listen to direction, and her documented dishonesty about the hours she was present at the workplace. The plaintiff also failed to complete training sessions, failed to watch instructional videos made available to her, and left at least one in-person training session five hours early. The plaintiff's performance deficiencies are corroborated in the record before the court by her coworker, Corrine Cole. [Doc. 28-2]. Stuckey gave the plaintiff a rating of 1.22 on her 90-day review, indicating "Performance is Below Expectations." The plaintiff's employment with IRMC was terminated on April 23, 2018.

The plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on March 18, 2019. The plaintiff then filed her complaint in this court on June 17, 2019, alleging a cause of action based on pregnancy discrimination in violation of Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e *et seq.* The defendants subsequently filed their motion for summary judgment.

<u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for

trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

The plaintiff asserts that the defendants discriminated against her in violation of Title VII and the Pregnancy Discrimination Act ("PDA") when they terminated her employment allegedly because she was pregnant. The PDA makes Title VII applicable to discrimination based on "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The Act "requires employers to treat women affected by such conditions 'the same for all employment-related purposes … as other persons not so affected but similar in their ability or inability to work.'" *Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 2019 WL 3720441, at *2 (5th Cir. 2019) (quoting 42 U.S.C. § 2000e(k)).

A plaintiff may establish a prima facie case of employment discrimination by coming forward with either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "If the plaintiff provides direct evidence, then the burden shifts to the employer to prove that the same adverse action would have occurred regardless of discriminatory

4

animus."[2] *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272 (5th Cir. 2006). If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Wallace*, 271 F.3d at 219. Once the employer articulates its legitimate reason, the burden shifts back to the employee to present "substantial" evidence that the employer's reason is mere pretext for discrimination. *Id.* Indeed, the evidence must be substantial – "a mere shadow of doubt is insufficient." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

The ultimate issue in a Title VII employment discrimination case is whether the employer acted with discriminatory intent. *EEOC v. Bailey Ford, Inc.*, 26 F.3d 570, 572 (5th Cir. 1994); *Risher v. Aldridge*, 889 F.2d 592, 598 (5th Cir. 1989) (stating that the issue is not whether the employer made the "best" decision or even a "sound" decision, but whether the employer discriminated against the employee). A plaintiff claiming discrimination carries the burden of proving discriminatory intent. *Wallace*, 271 F.3d at 219.

The plaintiff argues that her alleged conversation with Stuckey, quoted in full, *supra*, stands as direct evidence of discrimination. She asserts that Stuckey's statements, including "Why would you do that," "That's dumb," "That was a stupid decision," and "You just got pregnant, knowing that… you have to travel, and you have to do all of your work" constitute direct evidence that she was terminated because of her pregnancy.

The plaintiff does not attempt to establish a prima facie case through circumstantial evidence. "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal," and, "[b]y analogy, failure to brief an argument in the district court waives that argument in that court." *Adams v. United*

---

[2] In the absence of direct evidence, a plaintiff must establish her cause of action using circumstantial evidence and the *McDonnell Douglas* burden-shifting framework. *Jones*, 212 F. App'x at 275.

*Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. of the U.S. and Canada, AFL-CIO, Local 198*, No. 98-400-JWD-RLB, 2020 WL 6074627, at *5 (M.D. La. Oct. 15, 2020) (citing *U.S. v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation … is a failure to brief and constitutes waiver")).

"Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). A statement constitutes direct evidence if it is (1) related to pregnancy; (2) close in temporal proximity to the adverse employment action; (3) made by a person in authority over the adverse employment decision; and (4) related to the adverse employment action. *Levins v. Criterion Supply, Inc.*, 2019 U.S. Dist. LEXIS 182389, at *8 (S.D. Tex. Oct. 22, 2019) (citing *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007). "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

In *Levins*, the plaintiff presented evidence that her employer stated in an email that the plaintiff was "a cancer on the sales department" and that she knew she was pregnant, but "that cannot affect her performance in the coming months." *Levins*, 2019 U.S. Dist. LEXIS 182839, at *8. The employer also stated that the plaintiff would try to use her pregnancy "as an excuse" for deficient performance and was on "a very short leash." *Id.* at *8-9. The court found:

> The statements cited by Plaintiff do not show clearly *on their face* that [the employer] discriminated against Plaintiff because of her pregnancy. Although a juror might infer from [the employer's] statements that she wanted to terminated Plaintiff's employment because she was pregnant, the juror could equally infer from [the employer's] statements … that [the employer] was trying to monitor and see to it that Plaintiff's performance improved…. There are no statements cited by Plaintiff that refer to terminating Plaintiff's employment. The cited comments by [the employer] do not show, **without inference or presumption**, that

> Plaintiff's pregnancy was a basis for the termination of her employment at [the employer]. As a result, Plaintiff has failed to present direct evidence of pregnancy discrimination.

*Id.* at *9 (emphasis in original). The *Levins* court contrasted *Arismendez*, where a statement made by the plaintiff's branch manager – that she "knew it was illegal to terminate" the plaintiff because she was pregnant, but she "had a business to run and could not handle having a pregnant woman in the office" – was found to be direct evidence of discrimination. *Arismendez*, 493 F.3d at 608.

Similarly, in *Sims v. America's Family Dental LLP*, 2017 U.S. Dist. LEXIS 59322, at *16 (S.D. Tex. Apr. 19, 2017), the court found direct evidence where the plaintiff alleged that her supervisor told staff that he was going to "fire the next woman who became pregnant." There was also evidence in the record that the supervisor told the plaintiff directly and repeatedly that "he was going to fire her because she was pregnant." *Id.* No inference of intent was needed with respect to the supervisor's alleged remarks because the statements referred directly to the plaintiff's pregnancy and to the employment decision at issue – her termination. *Id.*

In *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001), the plaintiff, a nurse, alleged that she was terminated because of her pregnancy. Her employer, the hospital, asserted that she was terminated because of poor performance. *Id.* at 224. The plaintiff provided evidence that her supervisor told her she "needed to choose between [work] and family" and claimed that this statement served as direct evidence of discriminatory intent. *Id.* at 223. The Fifth Circuit, however, held that the supervisor's statement did not constitute such direct evidence because it did not relate to the decision to terminate her. *Id.* at 224. The court stated, "while [the supervisor's] comment may reflect a stereotype about a woman's commitment to the

7

workplace while maintaining a family life, it does not relate specifically to an employment decision of any kind….." *Id.*[3]

As in *Levins* and *Wallace* and in contrast with *Arismendez* and *Sims*, the statements allegedly made in the case *sub judice* by the plaintiff's supervisor, Stuckey – "Why would you do that," "That's dumb," "That was a stupid decision," and "You just got pregnant, knowing that… you have to travel, and you have to do all of your work" make no reference whatsoever to the plaintiff's termination. It is impossible to connect Stuckey's alleged statements to the plaintiff's termination "without inference or presumption." The statements alleged by the plaintiff are not even remotely related to the decision to terminate the plaintiff's employment. They involve reference to work and travel in general but not to termination. Stuckey's statements offered by the plaintiff to prove discriminatory animus "require the trier of fact to infer a nexus between the evidence and [the plaintiff's] termination." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006). "The need to infer or presume the causal connection means that the statements are not direct evidence of intentional … discrimination." *Id.* at 274. While a juror could possibly *infer* a connection, such inference is not allowed. The statements *on their face* show no evidence of discrimination, and a juror could just as easily infer that the alleged exchange reflected an amicable conversation about pregnancy in general and the challenges inherent in maintaining a work/life balance, especially when coupled with the plaintiff's testimony which immediately followed: "Then me and her, we started really joking."

Further, the plaintiff does not recall if she herself even knew she was pregnant at the time of the alleged conversation or if she just suspected that she was; so it would be presumptuous, as

---

[3] The *Wallace* court also noted that the word "stupid," referring to an alleged comment the plaintiff's supervisor directed at the plaintiff, "How stupid could you be?" – similar to some of the comments the plaintiff alleges Stuckey made here – "is not an epithet or a slur referring to a pregnant woman, it simply denotes a lack of intelligence." *Id.*

8

the defendants note, to assume that Stuckey knew.[4] Additional indication that the statements showed no animus against the plaintiff because of her pregnancy and that the defendants held no animus against pregnant women in general is the uncontested and corroborated[5] fact that Stuckey has a history of pregnant employees under her supervision who took maternity leave and returned to work without complaints or performance issues.

The defendants have presented a legitimate, nondiscriminatory reason for the plaintiff's termination – her poor job performance. Considering the extensive list of complaints coupled with the fact that many of those complaints are uncontested, the court is satisfied that the defendants have met their burden in this regard. Stuckey noted the following deficiencies in the plaintiff's performance:

> **Accepting Responsibility.** Lashea is not receptive to any type of criticism. The first time she was reprimanded, she was very confrontational. When asked about resident complaints, she is very rude. Her response is that she is just doing her job and that she doesn't care what they think. She should be using it as a tool to try to relate to her residents.
>
> **Communication (90 Day).** She refuses to listen to direction. She says she is writing things [down]. However, when tested on her knowledge of what has been taught, she doesn't retain the information.
>
> **Dependability.** Needs constant supervision or coaching. She left work on 04-18-18 w/o telling RPM. When RPM called the property, the manager wasn't there. She also did not have the answering service on. The answering service had not been on since at least 4-13-18. She provided conflicting accounts on the time she left. In a phone conversation, she said she was out for 'about an hour or so.' She sent a text saying she was only out for 30 minutes. The times don't match the time maintenance said she left. Maintenance reported she left around 10. RPM spoke with manager at 1:30pm. Lashea's excuse was that the floors were being done in the office so she 'didn't have anything to do.' She also left an HTC training on 4-17-18 at lunch time and did not return. This was done without permission of management. This was paid for by IRM.
>
> **Initiative.** Does not use time effectively. Spends all of her time supervising residents instead of completing assignments.

---

[4] Stuckey denies that she knew of the plaintiff's pregnancy even at the time of her termination.
[5] *See* [Doc. 28-2, Declaration of Corrine Cole].

> **Job Knowledge.** Is not using the tools provided to complete assignments. Did not complete required training. Is not developing the knowledge base needed for the position.
>
> **Teamwork.** Causes chaos by gossiping with residents and coworkers. Spreads negative rumors about other co-workers which disrupts the work environment.
>
> **Training/Development.** Because I can't supervise Lashea participating in training, she doesn't fully engage in the training. She left an MHC tax credit training early. Did not participate in the HUD training offered by Robin Madison. Looks to RPM and other coworkers to provide information instead of being accountable and learning it on her own.

[Doc. 28-1]. Among these complaints, it is uncontested that the plaintiff left the property during work hours without turning on the answering service, that residents complained to the defendants about the plaintiff's manner with them, and that the plaintiff did not complete all of her training sessions.[6] The complaints are also corroborated by the sworn statement of the plaintiff's co-worker, Corrine Cole. [Doc. 28-2].

The plaintiff presents no argument regarding pretext in response to the defendants' motion beyond a general assertion that Stuckey had no problem with the plaintiff's job performance until she allegedly discovered that the plaintiff was pregnant. The standard requires that a plaintiff must present "substantial" evidence of pretext, which the plaintiff has failed to do. *Wallace*, 271 F.3d at 220. Further, the plaintiff's own self-serving statements do not establish pretext and are insufficient to defeat a motion for summary judgment. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (Plaintiff's assertion of innocence alone does not create a factual issue as to falsity of employer's proffered legitimate, nondiscriminatory reason for termination). Considering that she has admitted to a number of the issues, has attempted to rebut none in her responsive brief, and all have been corroborated, it is

---

[6] Indeed, the plaintiff makes no attempt in her responsive brief to rebut any of the specific allegations of poor work performance.

clear that the plaintiff will be unable to rebut each of the performance issues listed in her 90-day review, which she is required to do to show pretext. *Wallace*, 271 F.3d at 220; *see also Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967-68 (5th Cir. 2016) (to defeat a motion for judgment as a matter of law, a plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates"). As the plaintiff has directed the court to no evidence that the defendants' reasons for terminating her employment were pretextual, the court finds that the defendants' motion for summary judgment is meritorious and should be granted.

## Conclusion

For the foregoing reasons, the court finds no genuine issue of material fact which would allow this case to survive summary judgment and proceed to trial. Accordingly, the court finds that the defendants' motion for summary judgment is well taken and should be granted. A separate order in accordance with this opinion shall issue this day.

This, the 23rd day of March, 2021.

       /s/ Neal Biggers  
      NEAL B. BIGGERS, JR.  
      UNITED STATES DISTRICT JUDGE